JUDGE HERB ROSS (Recalled)

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA
605 West 4th Avenue, Room 138, Anchorage, AK 99501-2296 - (Website: www.akb.uscourts.gov)
Clerk's Office 907-271-2655 (1-800-859-8059 In-State) - Judge's Fax 907-271-2692

**Filed On
5/9/06**

In re

SCOTT DOUGLAS ADAMS,

    Debtor.

Case No. J05-01061-HAR
In Chapter 7

MEMORANDUM REGARDING ORDER FOR
DISGORGEMENT OF ATTORNEY FEES

    1. <u>INTRODUCTION</u>-  The United States Trustee (the UST) filed a motion for disgorgement of the $500 attorney fee Brock Weidner charged the debtor to represent him in this chapter 7 case.  The disgorgement motion alleges that Weidner failed to properly file, notice or attend a motion to dismiss he filed for debtor.  The court had denied the motion to dismiss, and instead ordered the case closed without a discharge being granted.  Debtor was also barred from filing for 180 days due to his having missed four scheduled § 341(a) meetings.

    The dominant subtext of the motion is that Weidner habitually ignores the bankruptcy procedural rules when representing debtors, causing much extra work for the UST's office, the trustee, and possible harm to debtors.

    Weidner's main defense is that he was unexpectedly sick at about the time of the hearing, had troubles navigating the ECF system,[1] and was only filing the motion as a courtesy to the chapter 7 trustee.  He argues it was the debtor, not he, who missed the meetings.

---

[1] Case Management/Electronic Case Filing (CM/ECF)

1 of 10

Nonetheless, less than a day before the hearing on the disgorgement motion, Weidner filed a nonopposition (still proclaiming his innocense of wrongdoing), and has agreed to disgorge the $500 fee. There is ample legal authority and factual basis to support the disgorgement given Weidner's slipshod, nonchalant method of practicing in this and other bankruptcy cases. This memorandum is a intended as a clear message to him to "shape up, or ship out."

2. BACKGROUND-  This chapter 7 case was filed on August 22, 2005. A review of the schedules raises a question of why it was filed in the first place. It was filed before the October 17, 2005, date when the much more stringent BAPCPA procedures went into effect, but the schedules and statements[2] show a case in which bankruptcy protection was probably not even needed. The schedules and statements show:

- ☐ assets of only $1,000, all of them personal property and all claimed as exempt;
- ☐ liabilities of only $24,000 (all general unsecured, including a large one of $16,000 from 1998 and almost all of them over 5 years in age and mostly owed to entities outside Alaska, except for a $102 for a local collection agency in 2004);
- ☐ no lawsuits against debtor within the year of filing;
- ☐ minimal income ($5,064 in 2003, $1,538 in 2004, and $6,747 in 2005 to date of filing); and,
- ☐ debtor's residence from July 2004 to the date of filing was Lemon Creek Correctional Institution (which may explain debtor's problem in getting to § 341(a) meetings).

Weidner's 11th hour non-opposition to the disgorgement motion forestalls inquiry into why this case was even filed.

Weidner says he advised the debtor of the § 341(a) dates, but debtor never showed up for the four times they were scheduled and rescheduled. Weidner, himself, did show up. He told the

---

[2] Docket 1.

MEMORANDUM REGARDING ORDER FOR
DISGORGEMENT OF ATTORNEY FEES                                                                                  2 of 10

trustee that he would file a motion to dismiss, although he argues that debtor's absences were not his fault or problem.

The motion to dismiss he filed was bare-bones, saying only that the debtor wanted the case dismissed because of "personal problems" and was not able to attend the creditors' meeting.[3] It does not comply with local rules, which require factual and legal authority for a motion,[4] or the federal rules which require such a motion be noticed out for an actual hearing.[5]

My judicial assistant, Cheryl Rapp, caught the inadequacy in noticing (and discussed it with me), and then advised Weidner as a matter of courtesy he had to notice a hearing out. He was reluctant to undertake the task, and was told the motion would not be granted without a hearing. He did request a date for a hearing which was given to him about 30 days before the proposed March 10th hearing date.

Cheryl kept her eye on the case during February and called and/or e-mailed Weidner a number of times to remind him of his obligation to notice out the hearing. He said he was having trouble getting a current matrix, and was advised to contact Janet Stafford or Donna Williams, the court's ECF experts, to get assistance.

He nonetheless waited until less than 20 days before the hearing to contact them, and then only in a haphazard way – never advising them of the case name or impending hearing date. Donna, on her own initiative, deduced that he was taking about this case, and sent him a matrix on her own volition (which Weidner never acknowledges having received).

Weidner never advised my office – the judge's office – that he would not meet the 20 day noticing deadline and request a new, later hearing date. Instead, he went on vacation to Hawaii

---

[3] Docket 2, filed February 1, 2006.

[4] LBR 9013-1 (outlining the requirements that such a motion must be supported by adequate legal and factual support).

[5] FRBP 2002(a)(4).

MEMORANDUM REGARDING ORDER FOR
DISGORGEMENT OF ATTORNEY FEES                                                                                    3 of 10

sometime in late February or early March, and got sick.  He went to the Juneau ER on March 8th and was treated as an outpatient for pneumonia.  He claims he never had the March 10th hearing date for debtor's motion to dismiss on his calendar.  Despite all the help offered him, he simply blew it off.

On March 10th, the court called the case in Anchorage.  Mr. Weidner had not requested telephonic participation as is the local custom and rule[6] for out of town attorneys.   Nonetheless, he was called several times by the in-court clerk from the courtroom at the time of the hearing.  When we got his answering machine, Cheryl left a message that we were proceeding with the hearing.

At the hearing I denied the motion to dismiss, since it gave no background facts or legal authority, was not noticed out, and because dismissal was possibly – although unlikely – detrimental to the estate.  Instead, I ordered the case closed without entering a discharge for debtor, and enjoined him from filing for 180 days[7] because of his failure to attend the § 341(a) meeting.

Very shortly after entering the order, Weidner called and/or e-mailed the court staff and said he was very upset that the order had been entered.  He claims to have been sick, to have had no notice, to not know the hearing was going forward, etc.  Surprisingly (to me), Weidner took great umbrage at the order, calling it punitive and unjustified.  I do not believe he understood the ramifications of closing versus dismissal.

An order of <u>dismissal</u>, had one been granted, would possibly have itself been subject to a 180 day injunction against refiling.  The real difference is that, had the court <u>dismissed</u> instead of

---

[6] *See*, <u>Battley v Pace, Havelock, and Strachan (In re Pace)</u>, 132 BR 644, 646-47, 2 ABR 183 (Bankr D AK 1991) (unscheduled property were not abandoned, even though the trustee abandoned all scheduled assets), *affd*, <u>In re Pace</u>, 146 BR 562 (9th Cir BAP 1992), *affd*, <u>In re Pace</u>, 17 F3d 395 (Table) (9th Cir 1994) ; 11 USC § 554(b).

[7] 11 USC § 109(g).

MEMORANDUM REGARDING ORDER FOR
DISGORGEMENT OF ATTORNEY FEES                                                                          4 of 10

closed the case, any unscheduled asset which would still have been part of the closed bankruptcy estate,[8] might have been lost if the case had been dismissed.[9] Thus, the only real distinction was to preserve for the estate any hypothetically undisclosed assets (e.g., an undisclosed prisoner's suit against the Alaska correctional system).

*If* such an order was an affront to his client's rights, it was initially Weidner's duty to have properly filed and noticed the motion, and to have attended the hearing so he could have argued for the relief he thought appropriate.

The time to appeal or contest the March 10th order passed. Weidner states he tried unsuccessfully to contact debtor to get instructions and that he ethically could not proceed. He could have asked for additional time to contact debtor, but did not. To this date, he does not know if debtor cares about the form of the order that was entered.

The UST used the scenario of this case to move for a $500 disgorgement by Weidner. She supported the motion with declarations from:

- ☐ Cheryl Rapp (Judicial Assistant to Judge Ross): explaining the numerous attempts made to help Weidner get the motion noticed out;
- ☐ Donna Williams (Deputy Clerk of Court-ECF Specialist): explaining the steps she took to help Weidner with any ECF problems, going so far as to voluntarily sending the mailing matrix he had trouble downloading:
- ☐ Elaine Nelson (paralegal in the UST's office): setting out a number of examples where the UST was forced to birddog Weidner to get correct schedules, etc., including requests for voluntary disgorgement of fees; and,
- ☐ Susan Sneddon (Legal Data Technician in the UST's office): describing the continuing problems getting Weidner to properly request telephonic attendance for

---

[8] LBR 9076-1.

[9] 11 USC § 349(b)(3).

MEMORANDUM REGARDING ORDER FOR
DISGORGEMENT OF ATTORNEY FEES                                                                 5 of 10

debtor's at § 341(a) meetings, and the extra time and burden on the UST's office this caused.

All of which called to mind several recent experiences I personally have had with Weidner, myself:

- In In re Grant, J04-00738-HAR, Weidner filed a motion to avoid a judicial lien which had no supporting discussion of facts or law and was probably improperly served. This lead me to make an uncharacteristically strong statement about the quality of his representation in a memorandum about the denial of the motion:[10]

  > Mr. Weidner owes his client better lawyering; he owes the creditor proper service and an adequate explanation of what the debtor seeks; and, he owes the court compliance with the rules and a minimum of competence in representing his client. Mr. Weidner's current effort to obtain an avoidance of a lien fails to fulfill his duties to each of these entities.

  The motion was never refiled, and possibly the debtor is saddled with a lien which could have been avoided. And,

- In Rice v Rice, J05-90018-HAR, an ill-advised domestic dispute over a nominal amount of martial property, I lifted the stay (over Weidner's objection) to allow the state court judge (who had a background in the case) to adjudicate the facts, including property division and attorney fees, which that judge did. Weidner, without explanation, did not attend a subsequent status conference,[11] and then filed an amended complaint without authorization (which I struck without a hearing) and a request for a TRO for something the stay had been lifted to accomplish in state court (which I denied without a hearing).[12] I *sua sponte* gave him time to

---

[10] Docket 16 in the Grant case.

[11] *See*, Docket 11 in the Rice adversary.

[12] *See*, Docket 20 in the Rice adversary.

MEMORANDUM REGARDING ORDER FOR
DISGORGEMENT OF ATTORNEY FEES                                                                 6 of 10

amend the complaint to address the only apparent bankruptcy issues, but the case was voluntarily dismissed instead.

The Juneau standing trustee's opinion about Weidner would have been a mystery to me but for the fact that in another case after the March 10th order denying the motion to dismiss in the present one, the court undertook to notice a matter out itself on the assumption it would never have gotten done had we had to rely on Weidner, whose job it was to do it.  This was the Wallace case.[13]  The matter had to be noticed out so we could close the case.

I advised the clerk handling the matter by e-mail that I would do the noticing myself, and sent copies of my e-mail to Weidner and Larry Compton, the standing trustee for cases filed in Juneau.  This sparked an emotional response from Compton, who has suffered a thousand cuts from Weidner's professional incompetence or nonchalance in Juneau cases.  Strangely, Weidner has made Compton's e-mail a part of the record in the present case,[14] notwithstanding the way it berates him about his professional performance.  To paraphrase and quote:

- ☐ "Brock Weidner NEVER opens a book to look at the law, rules, etc.  He files things and waits for my office, the UST or the Court to correct his mistakes.  In 10 years he has failed to correctly notice out telephonic 341 meetings.  Either Susan Sneddon or my office has to babysit him until they get done.  I often have to continue hearings 3 or 4 months until he gets it right.  He constantly 'malpractices' his clients by not performing his work correctly and their cases get dismissed."
- ☐ He has reported Weidner to the UST and the bar, without any real action, and he has asked debtors to themselves report him to the bar on ethical grounds.
- ☐ The court should not babysit Weidner.

---

[13] J05-01837-HAR.

[14] Docket 41.

MEMORANDUM REGARDING ORDER FOR
DISGORGEMENT OF ATTORNEY FEES                                                                                    7 of 10

Weidner says a large part of his practice is bankruptcy, although he has had only three BAPCPA cases.[15] ECF shows he filed about 11 cases alone during the rush a few days before October 17, 2005, generally charging at the lower end of the going rate, about $500. My belief is he considers himself a bottom feeder, working for minimum compensation, and unwilling or reluctant to extend himself when necessary beyond the work of a non-attorney Bankruptcy Petition Preparer, even when professional responsibility requires it.[16]

His poor performance is an enigma. He is or has been licensed as an attorney in Montana, Missouri and Alaska. He is reputed to have attained an Airline Transport Rating as a pilot and a flight and ground instructor certification by the FAA. All of this shows ample intelligence to perform proper work in bankruptcy. But, something is lacking. He allows himself to perform at the substandard level described above.

3. ANALYSIS- An attorney for a debtor must file a statement with the court about his or her compensation, whether or not an application for approval the compensation is to be filed.[17] The bankruptcy court has authority to order disgorgement of fees deemed to be excessive and order their return to the entity paying them.[18]

The 9th Circuit has said:[19]

> The bankruptcy court had authority under 11 U.S.C. § 329(b) and Federal Rule of Bankruptcy Procedure 2017(b) to order ALC to return to Jastrem any attorneys' fees that exceeded the reasonable value of the services provided. Section 330 sets out the standard by which courts should determine the reasonableness of fees under § 329. See In re Geraci, 138 F.3d 314, 318 (7th Cir.1998); Hale v. United States Trustee (In re Basham), 208

---

[15] Docket 48.

[16] 11 USC § 110.

[17] 11 USC § 329(a). FRBP 2016(b).

[18] 11 USC § 329(b)(2).

[19] In re Jastrem, 253 F3d 438, 443 (9th Cir 2001); see, also, In re Zepecki, 277 F3d 1041, 1045-46 (8th Cir 2002).

MEMORANDUM REGARDING ORDER FOR
DISGORGEMENT OF ATTORNEY FEES 8 of 10

> B.R. 926, 931 (9th Cir. BAP 1997); 3 Lawrence P. King, Collier on Bankruptcy ¶ 329.04[1][c], at 329-19 (15th ed. rev.2001). Section 330(a)(3) states that in determining the amount of reasonable compensation, the court should consider the nature, extent, and value of the services rendered, taking account of all relevant factors, including the time spent on the services, the rates charged for the services, and the customary compensation of comparably skilled attorneys in other cases.

An order for disgorgement may be appropriate in a variety of situations. Included are those where an attorney ineffectively, incompetently,[20] or unethically performs the work.[21] Each of these factors apply in this case. The debtor was abandoned by Wafter a half-baked attempt to obtain a dismissal of the case. It is Weidner's good fortune that no significant damage was done.

Weidner's efforts were of questionable value to debtor. While there is some merit in Weidner's position that the debtor, not he, was the one that did not show up at the creditor's meeting, it was Weidner that filed an inadequate motion to dismiss, improperly failed to notice it, and failed to appear without forewarning the court. Taking him at his word that the order closing the case was unjustified (which the court does not in fact concede), the conclusion he is left with is that he failed his client. For this, disgorgement is appropriate.

The filing of this case in light of the financial dynamics mentioned above makes Weidner's services of questionable value in this case, even if a discharge had been granted. In other words, the financial situation of debtor, as disclosed in the schedules, makes it highly likely that he did not need a discharge in the first place.

4. CONCLUSION- Had this been a one-shot aberration in Weidner's *modus operandi* in this court, it is unlikely that the trustee would have sought disgorgement. Rather, it is evidence of a festering sore, one which requires relief. The $500 disgorgement will be ordered.

The court will, also, forward a copy of this memorandum and the underlying papers for this motion to the disciplinary counsel of the Alaska Bar Association.

---

[20] In re Day, 213 BR 145. 150-51 (CD Ill 1997).

[21] In re Soulisak, 227 BR 77, 82-3 (Bankr ED Va 1998), In re McNar, Inc., 116 BR 746, 754 (Bankr SD Cal 1990).

Finally, the court will be responsive to any allegations of the UST that Weidner continues to practice bankruptcy law in such an unprofessional manner.

DATED: May 8, 2006

        /s/ Herb Ross
        HERB ROSS
        U.S. Bankruptcy Judge

<u>Serve</u>:
Debtor at PO Box 1638, Haines, Alaska
Brock Weidner, Esq.
Larry Compton, Trustee
Kay Hill, U.S. Trustee's Office
Wayne Wolfe, Clerk
Maia Weber, Case Manager    D5868

05/09/06

MEMORANDUM REGARDING ORDER FOR DISGORGEMENT OF ATTORNEY FEES    10 of 10